IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL A. CASEY, | ) | CASE NO. 5:08 CV 1018 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Michael A. Casey, for disability insurance benefits and supplemental security income. The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Casey had severe impairments consisting of affective mood disorder (bipolar and depression); residuals from a left hip replacement in 1993; history of asthma C.O.P.D. and pertussive syncope; osteoarthritis in the lower and upper back; history of coronary artery disease with triple bypass in 1994; obstructive sleep apnea; a history of left shoulder pain and scapulothoracic dysfunction.[1] The ALJ made the following finding regarding Casey's residual functional capacity:

---

[1] Transcript ("Tr.") at 17.

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to sit for an unlimited time with need to stand after 1 hour; stand up to 4 hours in an 8-hour workday, 45 minutes at a time; can occasionally stoop and bend; cannot climb or work around unrestricted heights; can occasionally reach overhead with his left extremity; and needs to be in a relatively dust and fume free environment with no exposure to vibration.  In addition, he can perform unskilled tasks; can interact appropriately with the general public, supervisors and coworkers on a superficial basis; can perform work with no strict production quotas and can respond to infrequent changes in the work setting.[2]

The ALJ determined that the above-quoted residual functional capacity precluded Casey from performing his past relevant work.[3]

The ALJ posed several hypothetical questions to a vocational expert at the hearing.[4] Based, at least in part, on the responses to these questions, the ALJ decided that a significant number of jobs existed locally and nationally that Casey could perform.[5]  She, therefore, found Casey not under a disability.[6]

Casey asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record.  Specifically, he asserts that the ALJ erred at step five of the sequential evaluation process by failing to pose a proper hypothetical question to the vocational expert.

---

[2] *Id.* at 20-21.

[3] *Id.* at 24.

[4] *Id.* at 559-64.

[5] *Id.* at 25.

[6] *Id.* at 26.

The Court concludes that substantial evidence supports the ALJ's residual functional capacity finding and the limitations incorporated into the ALJ's inartful but, nevertheless, adequate hypothetical to the vocational expert.  The Commissioner's decision to deny disability insurance benefits and supplemental security income, therefore, must be affirmed.

## Analysis

### 1.  Standard of review

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[7]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner

---

[7] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[8]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[9]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.     Applicable law regarding hypotheticals to a vocational expert and substantial evidence in support of finding at step five of the sequential evaluation process**

A proper hypothetical question posed by an ALJ to a vocational expert at a hearing must include the ALJ's assessment of what the claimant "can and cannot do."[10]  The hypothetical should reference all of a claimant's physical and mental limitations.[11]

The testimony of a vocational expert in response to an ALJ's hypothetical question may provide substantial evidence in support of a finding at step five of the sequential evaluation process if the question accurately portrays the claimant's physical and mental impairments.[12]  Where the ALJ fails to pose a proper hypothetical question to the vocational expert, a reviewing court cannot assume that the vocational expert would have testified in

---

[8] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[9] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[10] *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).

[11] *Id.*

[12] *Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 573 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

support of the ALJ's ultimate finding if given a proper hypothetical.[13]  Accordingly, an ALJ's answer to an improper hypothetical question does not constitute substantial evidence in support of a finding at step five of the sequential evaluation process.[14]

### 3.    The hypotheticals at issue in this case

My analysis of the hypotheticals at issue here begins with the testimony of the medical expert.  That expert, Ronald Kendrick, M.D., made clear at the outset that he was only addressing physical impairment and not mental or psychological ones.[15]  He opined that Casey could carry at least 10 pounds occasionally and less than 10 pounds frequently; that he could sit and/or walk for 45 minutes at a time for around 4 hours a day; that he had no limitations on sitting; that he would need a sit/stand option; that he would be restricted to bending and stooping occasionally; that he would be totally restricted from climbing ladders or working at heights; that he should limit overhead reaching with his left upper extremity or left hand to only occasional; and that he should work in a relatively dust-free and fume-free environment without vibrations.[16]

The ALJ used this opinion as the basis for the initial hypothetical to the vocational expert.[17]  She offered to repeat the medical expert's residual functional capacity opinion for

---

[13] *Lancaster*, 228 F. App'x at 573.

[14] *Id.*

[15] Tr. at 549-50.

[16] *Id.* at 554-56.

[17] *Id.* at 559.

the vocational expert, but the vocational expert declined the invitation explaining that he had notes on that opinion.[18]  In response to that hypothetical, the vocational expert identified assembly positions, security monitor positions, and cashier positions consistent with the limitations in the residual functional capacity hypothetical.[19]

The ALJ then asked if the opinion would change if the claimant were off task five percent of the time.[20]  The vocational expert responded that such distractability was not significant.[21]  The ALJ inquired if the opinion would change if limitations to no strict production quotas and superficial conduct with others were added.[22]  The vocational expert responded that cashier positions would be negated but that the security monitor and assembly positions would be unaffected.[23]  In response to questions by Casey's attorney, the vocational expert affirmed that the assembly and security monitor jobs identified involve simple and repetitive work.[24]  He further testified that if the claimant was off task for 10 to 20 percent of the time, it would be problematic, particularly at 20 percent.[25]

---

[18] *Id.* at 559.

[19] *Id.* at 559-60.

[20] *Id.* at 561.

[21] *Id.*

[22] *Id.* at 561-62.

[23] *Id.*

[24] *Id.* at 565.

[25] *Id.*

In the ALJ's residual functional capacity finding she substantially incorporated the physical and environmental limitations testified to by the medical expert.[26]  To those she added limitations to unskilled tasks; superficial interaction with the general public, supervisors, and coworkers; no strict production quotas; and infrequent changes in the work setting.[27]

Admittedly, the ALJ did not pose clear, concise, and unified hypotheticals to the vocational expert.  Based upon my reading of the transcript, I find that the hypotheticals posed by the ALJ included physical and environmental limitations from the medical expert's opinion, no strict production quotas, superficial contact with others, and simple repetitive tasks.  The dispositive question, therefore, is whether the vocational expert's testimony regarding off task limitations negates his opinion as substantial evidence in support of a finding that a substantial number of jobs existed locally and nationally that Casey could perform.  In answering this question, I look to the record regarding limitations upon Casey's ability to concentrate.

**4.    The medical evidence regarding concentration**

Medical evidence does exist regarding Casey's diminished concentration by way of the opinions of the state agency professionals, an examining psychologist, and Casey's treating psychiatrist.

---

[26] *Id.* at 20-21.  She failed to expressly incorporate limitations on lifting and carrying. As counsel for Casey conceded at the oral argument, this oversight was harmless because of the limitation to sedentary work.

[27] *Id.*

-7-

Two state agency reviewing psychologists, Mel Zwissler, Ph.D. and Kevin Evans, rendered mental residual functional capacity assessments in March and May of 2005, respectively.  Dr. Zwissler rated Casey as not significantly limited in ability to maintain attention and concentration for extended periods[28] but moderately limited in maintaining concentration, persistence, and pace.[29] His narrative references the findings of an examining psychologist that Casey had "mild limitations of attention and concentration."[30]

Two months later Edwards rated Casey as moderately limited in concentration, persistence, and pace[31] and moderately limited in maintaining attention and concentration for extended periods.[32]  His narrative references "mild limitations of attention and concentration."  Edwards opined that Casey could perform multiple-step tasks while relating infrequently with others and adapt to infrequent, explained changes.[33]  He ruled out work involving timed or counted production demands.[34]

---

[28] *Id.* at 230.

[29] *Id.* at 244.

[30] *Id.* at 232.

[31] *Id.* at 363.

[32] *Id.* at 367.

[33] *Id.* at 369.

[34] *Id.*

An examining psychologist, Robert Dellara, Ph.D., performed an evaluation in February of 2005.[35]  He opined that Casey had a mild limitation in attention and concentration and no limitation in persistence and pace.[36]

Casey treated with a psychiatrist, Raju Reddy, M.D., from September of 2004 through May of 2007.[37]  Dr. Reddy did no mental residual functional capacity assessment.  His treatment notes, however, document some problems with concentration for a period of time in 2004 and 2005.  At the time of initial consultation, Dr. Reddy reported difficulty in concentration.[38]  In September and December of 2004, Dr. Reddy observed that Casey had difficulty with concentration[39] and impaired concentration.[40]  In March of 2005, he noted "concentration poor."[41]

Casey's concentration improved thereafter, however.  In late March 2005, Dr. Reddy observed "concentration is somewhat impaired."[42]  By July of 2005, he reported

---

[35] *Id.* at 207-11.

[36] *Id.* at 211.

[37] *Id.* at 351-52, 511.

[38] *Id.* at 351-52.

[39] *Id.* at 349.

[40] *Id.* at 344.

[41] *Id.* at 342.

[42] *Id.* at 319.

"concentration mildly impaired."[43]  This is Dr. Reddy's last notation of any impairment in concentration.

In April of 2007, Dr. Reddy reported concentration unimpaired.[44]  His final treatment note in May of 2007 made no mention of any concentration problem.[45]

**5.     The adequacy of the hypothetical**

Although the ALJ's framing of the hypotheticals to the medical expert were far less than perfect, I reluctantly find that those hypotheticals have the support of substantial evidence.

From my review of the medical evidence, it is clear that for a period of less than 12 months beginning in September of 2004 and extending to July of 2005, Casey had some problems with concentration.  During this time period, the state agency psychologists rated Casey's concentration as mildly to moderately limited.  Dr. Dellara, the examining psychologist, opined that Casey had a mild impairment in attention and concentration and no impairment in persistence or pace.  The notes of the treating psychiatrist, Dr. Reddy, document limitations extant for less than 12 months.  His last assessment of the limitation was mild.

Based on this record, an argument could be made that the ALJ needed to incorporate no limitations on concentration into the residual functional capacity finding or the

---

[43] *Id.* at 317.

[44] *Id.* at 513.

[45] *Id.* at 511.

hypothetical to the vocational expert.[46]  Nevertheless, she incorporated some limitations directed to such concentration problems as Casey manifested in the September 2004 through July 2005 time period.  I must conclude that those limitations were consistent with the medical evidence and, therefore, the decision at step five the sequential evaluation process must be affirmed.

**Conclusion**

Substantial evidence supports the finding of the Commissioner that Casey had no disability.  Accordingly, the decision of the Commissioner denying Casey disability insurance benefits and supplemental security income is affirmed.

IT IS SO ORDERED.

Dated: May 15, 2009                          s/ William H. Baughman, Jr.
                                             United States Magistrate Judge

---

[46] *Ortiz-Rosado v. Comm'r of Soc. Sec.*, 12 F. App'x 349, 352 (6th Cir. 2001) (the ALJ need not include in the hypothetical to a vocational expert a limitation that does not meet the twelve-month duration requirement).